

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00119-CV

DARREN BRADLEY SWAIN                                          APPELLANT

V.

CORPORAL JASON HUTSON,                                       APPELLEES
OFFICER DORA DEWALL,
SERGEANT DANIEL HENNING,
COURT CLERK NORMA
WILLIAMS, JUDGE STEWART
MILNER, JUDGE ROSALIA
MADDOCK, AND DOES 1–5

----------

### FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In three points, pro se Appellant Darren Bradley Swain appeals from the

trial court's grant of motions to dismiss for want of jurisdiction filed by Appellees

---

[1]*See* Tex. R. App. P. 47.4.

Arlington Municipal Court Judges Stewart Milner and Rosalia Maddock and Arlington Municipal Court Clerk Norma Williams (the judicial employees); Arlington Police Corporal Jason Hutson, Officer Dora DeWall,[2] Sergeant Daniel Henning, and City of Arlington employees John Does 1–5 (the other employees). We affirm.

## II. Factual and Procedural Background

This is the second time that Swain appeals the trial court's dismissal of his claims in this case for want of jurisdiction. *See Swain v. Hutson (Swain I)*, No. 02-09-00038-CV, 2009 WL 3246750 (Tex. App.—Fort Worth Oct. 8, 2009, pet. denied) (mem. op.).

## A. Factual Background in *Swain I*

As set out in our first opinion, Swain alleged that on August 30, 2006, he and two women parked his rental car in the parking lot of a vacant Arlington restaurant after one of the women spilled a soft drink in the car. *Id.* at *1. While all three individuals stood outside the car, Officer DeWall arrived to investigate, and Corporal Hutson arrived later to assist her. *Id.* Corporal Hutson knew the two women with Swain, and Swain alleged that, at some point, Corporal Hutson threw him against the rental car and searched him. *Id.*

---

[2]Officer DeWall's first name is spelled "Dora" in the caption of this case and in portions of the clerk's record, but it is spelled "Dara" in her affidavit and in her amended plea to the jurisdiction.

When Corporal Hutson found in Swain's pockets sealed samples of Protonix and Levitra, which Swain's physician had given him, the officers arrested him for possession of dangerous drugs and also cited him for offering to buy or sell goods or services on city property. *Id.* Swain was released on bail later that evening, but his drug samples and a number of cell phone "SIM" cards were not returned to him. *Id.* Over the next few months, Swain attempted on several occasions to reclaim his drug samples and SIM cards and to obtain copies of the charges, police reports, and other documents and information related to his arrest from city officials, with only limited success. *Id.* Swain received an additional citation in the mail on January 3, 2007, charging him with itinerant vending without a license based on the August 30, 2006 events. *Id.*

On February 1, 2007, Judge Milner presided over Swain's trial on the charge of offering to buy or sell goods or services on city property, found him guilty, and assessed a fine and costs totaling $173. *Id.* The possession of dangerous drugs charge was dismissed. *Id.* On March 2, 2007, Swain tried to pay his appeal bond for the February 1 conviction. *Id.* He alleged that municipal court clerk Williams initially refused to accept payment but eventually accepted a certified check and that a Tarrant County criminal court later dismissed the appeal because the appeal bond was filed too late. *Id.*

Swain filed a motion to dismiss the itinerant vending charge on May 2, 2008, alleging that he had been denied his right to a speedy trial. *Id.* at *2. On July 17, 2008, a jury in Judge Maddock's court found Swain guilty. *Id.*

3

Swain filed a civil suit against everyone he believed was responsible for his perceived injustices, alleging state law torts and violations of his federal constitutional rights. *Id.* The City of Arlington filed a motion to dismiss under section 101.106(e) of the civil practice and remedies code, which did not address Swain's federal claims, and the trial court granted the motion.[3] *Id.* at \*3. We affirmed the dismissal of Swain's state law claims but reversed and remanded his federal law claims to the trial court. *Id.* at \*6.

## B. Judicial Employees' Motion to Dismiss

After our mandate issued in *Swain I*, the judicial employees—Judges Milner and Maddock and municipal court clerk Williams—filed a motion to dismiss Swain's suit for lack of jurisdiction based on judicial immunity and governmental immunity. In support of their motion, they attached Exhibit A, thirty-six pages of business records from the municipal court pertaining to Swain's conviction for offering to sell goods or services on city property; Exhibit B, seventy-eight pages of business records from the municipal court pertaining to Swain's conviction for itinerant vending without a license; and Exhibit C, Williams's affidavit.

Exhibit A included a case history report that listed all of the recorded events and filings for Swain's case in Judge Milner's court. This exhibit also

[3]Swain nonsuited the City before the trial court ruled on the City's motion, in an attempt to prevent the application of section 101.106(e). *Swain I*, 2009 WL 3246750, at \*3. The trial court granted the nonsuit when it granted the City's motion. *Id.*

4

showed that Officer DeWall issued Swain a citation on August 30, 2006, for offering to sell goods or services on city property[4] and that Swain pleaded not guilty, was found guilty, and received a $111 fine plus costs (for a total of $173) on February 1, 2007. It further showed that on February 23, 2007, Swain was informed of the amount due for his appeal bond and for the reporter's record, that he said he would mail checks for these items, and that a check was received from Swain for the appeal bond amount on March 2, 2007.

Exhibit B included a case history report that listed all of the recorded events and filings in Swain's itinerant vending case. This exhibit also showed that Officer DeWall issued Swain a citation on January 2, 2007, for itinerant vending without a license[5] for his activities on August 30, 2006; that Swain filed a motion for continuance on August 3, 2007; that on May 2, 2008, and July 15, 2008, he moved to dismiss the case for violating his right to a speedy trial, which the municipal court denied as moot; that a jury found him guilty on July 17, 2008; and that the municipal court assessed a $488 fine plus costs (for a total of $550).

---

[4]The complaint alleged that Swain had knowingly occupied a shoulder, improved shoulder, sidewalk, median, or public right-of-way in a prohibited area, to-wit: in the 2200 block of North Collins Street, for the purpose of selling or offering for sale any product, property, or service to the occupant of any vehicle, other than a lawfully parked vehicle, "in violation of the Ordinance in said City Governing Streets."

[5]The jury charge defined "itinerant vending" as engaging in a temporary business in the City in person or by an agent for the purpose of soliciting, selling, or taking orders for merchandise or services.

In Exhibit C, Williams described her interactions with Swain: She gave him an "Appeal Information" form after he was found guilty of offering to sell goods or services on city property on February 1, 2007; she recorded his motion for new trial on February 13, 2007, which the municipal court denied on February 15, 2007; and she recorded that Swain dropped off a "Notice of Appeal" on February 23, 2007. Williams also stated that on March 2, 2007, Swain appeared at the cashier window in the municipal courthouse and presented a check for $346, made payable to Tarrant County, with no appeal bond or additional paperwork attached; she accepted the check and recorded a copy of it; Swain continued to request additional information; and she and another clerk told him that they could not give him legal advice and referred him to his "Appeal Information" form. After they asked Swain to leave and he refused, Williams asked a nearby warrant officer for assistance, and then Swain left.

## C. Swain's Post-Remand Petition

Swain did not file a response to the judicial employees' motion, but he filed a verified amended petition not long afterward, adding Does 1–5 as defendants and adding the following factual allegations: (1) Corporal Hutson knew the two women with Swain because he had been previously involved in litigation with them; (2) Neither of the two drugs that Corporal Hutson found on Swain produce any symptoms of intoxication, depriving Corporal Hutson of probable cause to suspect that Swain was under the influence of any substance or to search him; (3) Corporal Hutson arrested Swain at around 6:00 p.m. and did not read to him

6

his *Miranda* rights before several police officers searched his rental car for an hour and a half while he waited in Corporal Hutson's vehicle to be transported to jail; (4) Corporal Hutson refused his request to be taken before a magistrate judge; and (5) Corporal Hutson stranded the two women in the vacant parking lot, demonstrating the retaliatory nature of Corporal Hutson's actions for the women's previous litigation against him. In his amended petition, Swain renewed his complaints that during the first three hours of his arrest and incarceration he was denied access to a phone and that he was released at 1:20 a.m., after posting bond, approximately six hours after being taken into custody.

During the hearing on the judicial employees' motion, Swain offered nine exhibits—appraisal information for a piece of City of Arlington commercial property; a letter from Swain's physician explaining the drug samples; a prescription for the drugs; a questionnaire with a judge's handwritten answers; an arrest warrant affidavit template ; the judgment for Swain's conviction for offering to sell goods or services on city property; the State's motion to dismiss one of the charges; Swain's check for $346 made payable to Tarrant County; and the possession of dangerous drugs charging instrument. The trial court granted the judicial employees' motion on November 15, 2010.

## D. Other Employees' Motion to Dismiss

The other employees, Does 1–5 and the police officers—Corporal Hutson, Officer DeWall, and Sergeant Henning—filed a motion to dismiss for lack of jurisdiction based on governmental immunity and qualified immunity. To their

7

motion, they attached Corporal Hutson's affidavit as Exhibit A, Officer DeWall's affidavit as Exhibit B, twenty-six pages of administrative business records from the Arlington police department as Exhibit C, and our opinion in *Swain v. State (Swain II)*, 319 S.W.3d 878 (Tex. App.—Fort Worth 2010, no pet.) (mem. op.), in which Swain appealed his conviction for itinerant vending without a license, as Exhibit D.

In his affidavit, Corporal Hutson stated that he spotted Officer DeWall conducting an investigation in an area he was patrolling. He recognized the two women with Swain as subjects he had "dealt with on numerous occasions" when he worked on the east side of Arlington "in reference to drugs, narcotics, stolen vehicles, and other such crimes." Corporal Hutson stated that he spoke with Officer DeWall about what she had found during her investigation and that she said that the subjects had multiple cell phones in the rear of the vehicle and were attempting to sell them on the public sidewalk with a tent set up.

Corporal Hutson noticed multiple bulges in Swain's pockets and advised Swain that he was going to pat him down for weapons. He asked Swain for a business card, and when Swain pulled items from his left pocket, Corporal Hutson noticed two blister packs containing what he believed to be prescription pills. Swain told him that he did not have a prescription for the pills with him. Corporal Hutson identified the drugs—Protonix and Levitra—as dangerous drugs. Officer DeWall placed Swain in handcuffs because he did not have a

8

prescription for the drugs. Corporal Hutson stated that he did not use any force on Swain.

In her affidavit, Officer DeWall stated that at approximately 4:59 p.m. on August 30, 2006, she was on a routine patrol when she saw Swain and two women setting up a tent with a sign for "Sprint," a phone company, and that it appeared to her that they were trying to sell items to people driving down the street. The tent was on the other side of the sidewalk from a vacant restaurant parking lot, "in the grassy area, which is city property." She pulled into the parking lot and approached them. Swain had the trunk of the car open, and it appeared that he was selling items—cell phones and accessories—out of his trunk. Swain told her he was selling items, but because he seemed evasive in his answers, she asked to see his identification. Officer DeWall explained to Swain and the two women that they could not sell from the roadway on city property. Officer DeWall issued a citation to Swain for offering to sell goods and services on city property, and Corporal Hutson told Swain that he was under arrest for possession of a dangerous drug. Officer DeWall stated that she did not see any officer use force on Swain at any time during the encounter.

The administrative records in Exhibit C contained, among other items, Swain's arrest report for possession of the Protonix and Levitra and the incident reports by Corporal Hutson, Officer DeWall, and Officer McLeod, another officer that attended the scene. Exhibit C also contained the booking/record form, which reflected a notation that Swain refused to sign it. The form contained a

9

statement that the person being booked had been given the opportunity to make one free phone call within the local dialing area, or at his own expense if outside the local dialing area, and that there were phones located in the dayroom area and holding cells. Swain did not initial his acknowledgement of this statement.

Exhibit D reflected that we dismissed Swain's appeal of his itinerant vending without a license conviction for want of jurisdiction because his notice of appeal to this court was untimely. *See Swain II*, 319 S.W.3d at 879–80 (noting that Swain failed to file his notice of appeal within thirty days of the county criminal court's judgment).

**E.  Swain's Response to the Other Employees' Motion**

Swain attached an affidavit to his response to the other employees' motion in which he restated many of the same allegations in his amended petition. Swain did not offer any evidence at the hearing on this motion. The trial court granted the other employees' motion on February 5, 2011.

**F.  Procedural History**

In addition to granting both motions, the trial court denied Swain's requests for findings of fact and conclusions of law. This appeal followed.

### III.  Immunity

In his first two points, Swain complains that the trial court erred by concluding that the judicial employees and the other employees have immunity under 42 U.S.C. § 1983 and by dismissing his section 1983 claims against them.

10

## A. Standard of Review

We review the trial court's grant of a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). If the pleadings affirmatively negate the existence of jurisdiction, then they are incurably defective, and the trial court may grant the plea to the jurisdiction without giving the plaintiff an opportunity to amend. *Id.* at 226–27. However, a trial court is not required to look solely to the pleadings; it may consider evidence and must do so when necessary to resolve the jurisdictional issues. *Id.* at 227; *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 804 (Tex. App.—Fort Worth 2008, no pet.). In such cases, the defendant has the initial burden to support the plea to the jurisdiction with evidence. *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied); *see Miranda*, 133 S.W.3d at 228 (stating that this standard generally mirrors the traditional summary judgment standard). If the defendant does so, the plaintiff must raise a jurisdictional fact issue to survive the plea. *Heard*, 252 S.W.3d at 102; *see Miranda*, 133 S.W.3d at 228. But if the evidence is undisputed or fails to raise a jurisdictional fact issue, then the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102.

## B. 42 U.S.C. § 1983

Section 1983 provides a civil cause of action for the deprivation of an individual's federal statutory or constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C.A. § 1983 (West 2003).

A claimant can bring a section 1983 action against a public official in his personal or official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985). Personal-capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165, 105 S. Ct. at 3105. Official-capacity suits, in contrast, are treated as suits against the entity of which the officer is an agent. *Id.* at 165–66, 105 S. Ct. at 3105; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996) (recognizing that cities qualify as persons subject to suit under section 1983). If a section 1983 suit is brought against an entity, such as a city, the plaintiff must show that the entity's policy or custom was the moving force behind the constitutional violation. *Graham*, 473 U.S. at 166, 105 S. Ct. at 3105; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978) (recognizing that this requirement prevents a municipality from being held liable on a section 1983 claim on a *respondeat superior* theory).

Under the doctrine of absolute immunity, judges are immune from section 1983 suits for their judicial acts unless they act in "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S. Ct. 1099, 1104–05 (1978). Whether an act is a judicial act relates to the nature of the act itself—"whether it is a function normally performed by a judge"—and the expectations of

12

the parties—"whether they dealt with the judge in his judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 12, 112 S. Ct. 286, 288 (1991) (per curiam).

The doctrine of qualified immunity shields an official performing discretionary functions from liability for civil damages under section 1983, provided that the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have been aware. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (recognizing that this is "immunity from suit, not simply immunity from liability"); *Leachman v. Dretke*, 261 S.W.3d 297, 312 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g). Once a government official who is sued in his personal capacity raises qualified immunity, the burden shifts to the plaintiff to rebut this by showing, in pertinent part, that he has alleged a violation of a constitutional right. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008).

## C. Analysis

### 1. Judicial Employees

In his first point, Swain argues that the trial court erred by determining that it lacked jurisdiction over the judicial employees and by dismissing his section 1983 claims against them.

#### a. Official Capacity

Swain complained in his petition that Williams violated his due process rights in her personal capacity[6] and in her official capacity by refusing to timely

---

[6]If a party provides no argument to support its position, the appellate court may properly overrule the issue as inadequately briefed. Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that issue may be waived due to inadequate

13

accept his appeal bond due to the City's policy or its failure to train its employees. The judicial employees argued in their motion to dismiss that Swain failed to allege facts sufficient to state an official-capacity claim under section 1983 and that, therefore, this claim was a mere tort claim barred by governmental immunity.[7] *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (stating that governmental immunity defeats subject matter jurisdiction over a tort claim against a subdivision of the state unless the subdivision expressly consents to suit); *Karnes Cnty. v. Thomas*, No. 04-06-00613-CV, 2007 WL 2261694, at *6 (Tex. App.—San Antonio Aug. 8, 2007, no pet.) (mem. op.) (involving a similar relationship between governmental immunity and failure to state a claim under section 1983).

Because Swain's official-capacity suit against Williams is essentially a claim against the City, we consider whether Swain properly alleged in his petition a violation of a federal right resulting from the City's policy. *See Graham*, 473 U.S. at 165–66, 105 S. Ct. at 3105; *Pineda v. City of Houston*, 291 F.3d 325, 331

briefing). To the extent that Swain alleged in his petition a personal-capacity claim against Williams, he waived this claim on appeal because he neither argued nor cited any authority for the proposition that Williams violated a law, federal or otherwise. *See* Tex. R. App. P. 38.1(i); *Clifton v. Walters*, 308 S.W.3d 94, 99 (Tex. App.—Fort Worth 2010, pet. denied) (dismissing appellant's contention because it was not supported by argument, analysis, or citation to relevant authorities).

[7]Of the claims that Swain asserted in his petition against the judicial employees, only the claim against Williams referenced an official policy or custom, so we interpret this as the only official-capacity claim. *See Graham*, 473 U.S. at 166, 105 S. Ct. at 3105.

14

(5th Cir. 2002) (recognizing that failure to train employees can constitute a policy for which a city may be liable under section 1983), *cert. denied*, 537 U.S. 1110 (2003). Swain never alleged that Williams failed to accept the appeal bond on the first day that Swain offered it to her. Instead, he merely alleged that he tendered the check on March 2, 2007, that Williams initially refused it but later accepted it, that she file-stamped it to show timely payment, that his appeal was dismissed because the appeal bond was filed too late, and that this demonstrated the existence of an unconstitutional City policy or the City's failure to train its employees. Indeed, the stamp on the copy of the check that Swain submitted at the judicial employees' hearing indicates that it was accepted on March 2, 2007, and Williams's affidavit reflects the same. Therefore, Swain did not allege a violation of a federal right, constitutional or otherwise. *See Graham*, 473 U.S. at 166, 105 S. Ct. at 3105.

While courts generally give plaintiffs an opportunity to amend insufficient but curable pleadings such as these, a plaintiff can waive this by inaction. *See Haddix v. Am. Zurich Ins. Co.*, 253 S.W.3d 339, 347 (Tex. App.—Eastland 2008, no pet.) (citing *Kassen v. Hatley*, 887 S.W.2d 4, 13–14 n.10 (Tex. 1994)). Here, Swain waived his opportunity to cure the deficiency in his pleadings when he failed to request permission to amend his petition as to these claims after the trial court granted the judicial employees' plea to the jurisdiction. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex. 2007) (deciding that the opportunity to amend arises after a court finds the plea meritorious); *Tara*

15

*Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 578 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("By failing to seek permission to amend after the trial court found the City's plea meritorious, appellants forfeited the opportunity to amend . . . ."). Therefore, because Swain failed to allege a violation of the only federal right that he raised in his official-capacity claim, the City was entitled to governmental immunity, *see Sykes*, 136 S.W.3d at 638, and we overrule this portion of Swain's first point.

### b. Personal Capacity

Swain complained in his petition that the judges violated his due process rights by denying his motions for a new trial and also violated his right to a speedy trial. Further, he generally alleged that judges violated his due process rights by trying to force him to get an attorney.

The case history reports that the judicial employees included in Exhibits A and B established that the judges made their rulings in response to motions that Swain filed with the court, which showed that Swain's expectation was to deal with each judge in his or her judicial capacity to obtain favorable rulings. *See Mireles*, 502 U.S. at 12, 112 S. Ct. at 288. Additionally, rulings on motions for new trial and motions to dismiss for failure to provide a speedy trial are functions normally performed by a judge. Tex. Code Crim. Proc. Ann. arts. 28.061, 40.001 (West 2006); *Mireles*, 502 U.S. at 12, 112 S. Ct. at 288. Therefore, these judges' rulings were judicial acts that were entitled to absolute immunity from Swain's section 1983 suit. *See Stump*, 435 U.S. at 355–57, 98 S. Ct. at 1104–05. Accordingly, we overrule this portion of Swain's first point against the judicial employees in their personal capacities.

16

Turning to the assertion that judges tried to force Swain to obtain an attorney, the judicial employees' case history reports listed every filing and recorded event in both cases, and the only evidence relating to this claim showed that Swain acknowledged and waived his right to an attorney on his trial request form. Because Swain took action to submit a written request such as this, we can only conclude that he expected to deal with the judge in his or her judicial capacity. *See Mireles*, 502 U.S. at 12, 112 S. Ct. at 288. Further, by including notification of Swain's right to representation on this request form, the judge was performing a function normally performed by a judge prior to a defendant's voluntary and intelligent waiver of this right. *See* Tex. Code Crim. Proc. Ann. art. 1.051(f), (g) (West Supp. 2011); *Mireles*, 502 U.S. at 12, 112 S. Ct. at 288. In the exhibits that Swain submitted before the hearing on the judicial employees' motion to dismiss, he did not include evidence that any judge tried to force him to obtain an attorney; thus, he failed to raise a jurisdictional fact issue to overcome the judicial employees' plea. *See Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102. Therefore, the judicial employees were entitled to judicial immunity against this claim. *See Stump*, 435 U.S. at 355–57, 98 S. Ct. at 1104–05. Accordingly, we overrule this portion of Swain's first point against the judicial employees in their personal capacities.

In sum, because the City was entitled to governmental immunity against Swain's official-capacity claim and the judicial employees were entitled to judicial immunity against his personal-capacity claims, we overrule Swain's first point. *See Waltman*, 535 F.3d at 346; *Miranda*, 133 S.W.3d at 228.

### 2. Other Employees

17

In his second point, Swain argues that the trial court erred by determining that it lacked jurisdiction over the other employees and by dismissing his section 1983 claims against them.

### a. Official Capacity

In their motion to dismiss, the other employees argued that Swain failed to allege facts sufficient to state a claim under section 1983 and that, therefore, his claims were mere tort claims barred by governmental immunity. *See Sykes*, 136 S.W.3d at 638; *Karnes Cnty.*, 2007 WL 2261694, at *6. Because Swain's official-capacity suit against the other employees is essentially a claim against the City, we consider whether Swain's petition properly alleged constitutional violations resulting from a policy or custom of the City. *See Graham*, 473 U.S. at 165–66, 105 S. Ct. at 3105.

In his petition, Swain alleged malicious prosecution[8] for his initial arrest and for the "continued processing" of the charge. However, malicious prosecution, standing alone, is not a recognized ground for a section 1983 claim. *Rogers v. Owings*, No. 09-10-00587-CV, 2011 WL 1842756, at *10 (Tex. App.—Beaumont May 12, 2011, no pet.) (mem. op.) (citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) ("We decide that 'malicious prosecution' standing alone is no violation of the United States Constitution, and [that] to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under

---

[8]Of the claims that Swain asserted in his petition against the other employees, only the malicious prosecution claim referenced an official policy or custom, so we interpret this as the only official-capacity claim. *See Graham*, 473 U.S. at 166, 105 S. Ct. at 3105.

federal and not state law.")). Within his malicious prosecution argument, however, Swain generally alleged that the police officers lacked probable cause to believe that his prescription drugs were dangerous drugs. Swain pleaded that "Hutson knew, or should have known, that police do not arrest individuals for possession of physician samples under any but the most extreme circumstances" and that the "true basis of Swain's arrest was Hutson's motive to punish Swain for his association with [the two women in the car]."

Essentially, Swain alleged that the City was liable for a police officer's actions that were motivated, not by a desire to comply with the City's policy or custom, but by an association that the officer individually had with the parties involved. Because a municipality cannot be held liable under section 1983 on a *respondeat superior* theory, this allegation affirmatively negated the existence of jurisdiction, and the trial court properly dismissed this portion of Swain's claim. *See Monell*, 436 U.S. at 691, 98 S. Ct. at 2036 (emphasizing the importance of distinguishing between individual violations perpetrated by local government employees and those that can be fairly identified as actions of the government itself); *Miranda*, 133 S.W.3d at 226–27.

Swain also claimed, in the alternative, that the City's failure to train personnel caused Corporal Hutson's conduct, but he failed to allege or make any reference to deliberate indifference, an essential element of failure-to-train claims brought under section 1983. *See Pineda*, 291 F.3d at 331–32. Moreover, Swain waived his opportunity to cure this deficiency when he failed to amend his petition after the trial court granted the other employees' plea to the jurisdiction. *See Koseoglu*, 233 S.W.3d at 839–40; *Tara Partners*, 282 S.W.3d at 578. Because Swain failed to properly allege a section 1983 claim, the City was

19

entitled to governmental immunity, *see Sykes*, 136 S.W.3d at 638, and we overrule this portion of Swain's second point.

### b. Personal Capacity

Swain brought claims against the other employees in their personal capacities alleging (1) assault and battery, (2) false arrest, (3) malicious prosecution, (4) false imprisonment, (5) denial of due process, (6) an ex post facto prosecution, and (7) fraud on the court.[9]

While Swain did not formally present evidence at the hearing to rebut the other employees' evidence, he attached an affidavit to his response to the plea, so we turn next to whether that evidence created a fact issue regarding any alleged constitutional violations. *See Waltman*, 535 F.3d at 346; *Miranda*, 133 S.W.3d at 231 (considering an affidavit attached to the plea to the jurisdiction as evidence); *see also San Antonio Hous. Auth. Found., Inc. v. Smith*, No. 04-10-00759-CV, 2011 WL 3627699, at *5 (Tex. App.—San Antonio Aug. 17, 2011, no pet.) (mem. op.) (considering evidence attached to the plaintiff's response to determine if it raised a fact issue).

### i. Assault and Battery

Swain alleged in his petition that Corporal Hutson committed assault and battery on him in the course of his arrest and that Officer DeWall did not intervene. Even if we interpret this as a section 1983 excessive force claim,

---

[9]If a party provides no argument to support its position, the appellate court may properly overrule the issue as inadequately briefed. Tex. R. App. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284. On appeal, Swain references a false document but does not argue fraud on the court, nor does he provide any citation to authority addressing fraud on the court. Therefore, this portion of Swain's argument is inadequately briefed and is waived. *See* Tex. R. App. P. 38.1(i); *Clifton*, 308 S.W.3d at 99.

Swain failed to present any evidence of an injury, an essential element of such a claim, to rebut the other employees' evidence that Corporal Hutson did not use force on Swain, let alone injure him. *See Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008) (listing the "injury" allegation as the threshold consideration before evaluating the force that caused the injury). In his affidavit, Swain merely asserted that Corporal Hutson "pushed me forcefully against the vehicle I had been driving, searched my pockets, then threw me to the ground and handcuffed me." *See id.* at 501 (finding that injury was properly alleged when evidence showed not only that the police forcefully slammed the plaintiff into a vehicle but also that the plaintiff sustained injuries to his face and jaw resulting in medical expenses).

Because Swain has not shown that Corporal Hutson used excessive force, no need for intervention arose, so Swain's failure-to-intervene claim against Officer DeWall also fails. *See Johnson v. Bradford*, 72 Fed. Appx. 98, 2003 WL 21697174, at *1 (5th Cir. 2003) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). Because Swain failed to raise a fact issue regarding excessive force, we overrule this portion of his second point pertaining to his claim against Corporal Hutson and Officer DeWall in their personal capacities. *See Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102.

### ii. False Arrest

Swain alleged in his petition that Corporal Hutson and Officer DeWall arrested him for possession of drugs that they knew, or should have known, were not "dangerous drugs." We interpret this as a Fourth Amendment claim asserting lack of probable cause to arrest Swain for possession of dangerous drugs.

21

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008). The prima facie elements of the offense for which Corporal Hutson needed to have probable cause are (1) the possession of a drug that (2) is classified as "dangerous." *See* Tex. Health & Safety Code Ann. § 483.041(a) (West 2010); *Ex parte Charles*, 582 S.W.2d 836, 837 (Tex. Crim. App. 1979) (holding that the State must allege facts indicating why the drug is a dangerous drug when the drug is not listed in the Dangerous Drug Act). While the possession of dangerous drugs offense does not apply to drugs obtained from either a pharmacist or a practitioner, these exceptions are not prima facie elements of the offense. Tex. Health & Safety Code Ann. § 483.071 (West 2010) (stating that the defendant has the burden to prove, and the State is not required to negate, the exception, excuse, or exemption to prevail at trial); *see id.* §§ 483.041(a), 483.042(a) (West 2010) (stating that both exceptions require, in part, a valid prescription as well as a label, attached directly to the bottle, that names the prescribing practitioner). Thus, to meet their burden in their plea to the jurisdiction, the police officers only had to show that "the totality of the facts and circumstances within [Corporal Hutson]'s knowledge at the moment of the arrest [we]re sufficient for a reasonable person to conclude" that Swain (1) possessed a drug that (2) was classified as dangerous. *See Mesa*, 543 F.3d at 269 (defining probable cause); *Miranda*, 133 S.W.3d at 228 (stating that the standard for pleas to the jurisdiction generally mirrors the traditional summary judgment standard); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000) (stating that a party

22

establishes its right to summary judgment "by conclusively proving all elements of the movant's cause of action or defense as a matter of law").

To this end, Corporal Hutson stated in his affidavit that Swain pulled two blister packs containing Protonix and Levitra out of his left pocket. He also asserted that he believed that these drugs were prescription pills "identified as dangerous drug[s] using the Drug Identification Bible 2004/2005 Edition." In response, Swain did not present evidence—that he possessed a valid prescription and that the bottle displayed a label naming the prescribing practitioner—of an exception to show that Corporal Hutson's belief that Swain possessed dangerous drugs was anything but reasonable. *See* Tex. Health & Safety Code Ann. §§ 483.041(a), 483.042(a), 483.071; *Mesa*, 543 F.3d at 269. Indeed, he admitted to Corporal Hutson at the scene that he did not have a prescription for the drugs with him. Because Corporal Hutson presented uncontroverted evidence that Swain possessed drugs and uncontroverted evidence of why Corporal Hutson believed that these were classified as dangerous drugs, Swain failed to raise a fact issue regarding probable cause. *See Soto v. State*, 810 S.W.2d 861, 864 (Tex. App.—Fort Worth 1991, pet. ref'd) (determining that probable cause for the dangerous-drug-possession arrest existed when the drug's label stated that a prescription was required and the defendant could not show that either exception applied).

Further, because "the sum of the information known to the cooperating agencies or officers at the time of an arrest or search by any of the officers involved is to be considered in determining whether there was sufficient probable cause," we need not address whether Officer DeWall independently had probable cause. *See Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App.

23

1982), *cert. denied*, 469 U.S. 1181 (1985). Therefore, we overrule this portion of Swain's second point pertaining to his claim against Corporal Hutson and Officer DeWall in their personal capacities. *See Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102.

### iii. Malicious Prosecution

Swain alleged in his petition that his arrest by Corporal Hutson and his continued prosecution by unnamed City functionaries constituted malicious prosecution. Because malicious prosecution is not a valid claim under section 1983, we must dismiss this claim unless we interpret Swain's petition to allege a violation of a federal constitutional right for which he presented evidence raising a fact issue. *See Castellano*, 352 F.3d at 942; *Miranda*, 133 S.W.3d at 228. Within his malicious prosecution allegation, Swain asserted that Corporal Hutson arrested him without probable cause, but as previously stated, Swain failed to raise a fact issue regarding this claim. *See Mesa*, 543 F.3d at 269. Therefore, we overrule this portion of Swain's second point pertaining to his claim against Corporal Hutson and the Does in their personal capacities.

### iv. False Imprisonment and Denial of Due Process

Swain alleged in his petition that Corporal Hutson and unnamed City functionaries prevented Swain from making a phone call to arrange for his release, which led to his false imprisonment for over six hours. While Swain did not identify the resulting constitutional violation, he alleged the same facts in his due process claim, and so we interpret this as such. *See Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 2693–94 (1979) (interpreting the "[section] 1983 false imprisonment action" for prolonged detention as a Fourteenth Amendment claim for deprivation of liberty without due process). However, an isolated

24

deprivation of the right to make a telephone call is a trivial injury and is not sufficient to constitute a constitutional violation. *McCoy v. Gordon*, 709 F.2d 1060, 1063 (5th Cir. 1983), *disapproved of on other grounds by Augustine v. Doe*, 740 F.2d 322 (5th Cir. 1984). Therefore, Swain failed to raise a fact issue on this portion of his due process claim against Corporal Hutson and the Does in their personal capacities. *See Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102. Accordingly, we overrule this portion of Swain's second point.

Swain also alleged that Corporal Hutson and Officer DeWall violated his due process rights by not reading him his *Miranda* rights before taking him to jail. However, the Fifth Amendment's privilege against self-incrimination "can be violated only *at* trial, even though pre-trial conduct by law enforcement officials may ultimately impair that right." *Murray v. Earle*, 405 F.3d 278, 285 (5th Cir.), *cert. denied*, 546 U.S. 1033 (2005). Because Swain admits that the prosecution dropped the charge for which Swain was arrested, no constitutional violation occurred, and Swain failed to raise a fact issue on this portion of his due process claim against Corporal Hutson and Officer DeWall in their personal capacities. *See id.*; *Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102. Accordingly, we overrule this portion of Swain's second point.

Additionally, Swain alleged in his petition that Corporal Hutson and Officer DeWall violated his due process rights by taking him directly into custody without taking him before a magistrate. Under the Fourth Amendment, a judicial officer must make a prompt probable cause determination "as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 n.26, 95 S. Ct. 854, 863, 869 n.26 (1975) (noting that this "is required only for those suspects who suffer restraints on liberty other than the condition

25

that they appear for trial"). Such determinations within forty-eight hours of arrest generally comply with this promptness requirement. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670 (1991) (stating that determinations made within this time frame might still violate the Fourth Amendment if the arrestee can show unreasonable delay).

Swain stated in both his petition and his affidavit that he was released on bond approximately six hours after police took him into custody, which was seven hours after his arrest and well within the forty-eight-hour requirement. Further, the police submitted evidence that there were no conditions on Swain's release on bond. In response, Swain did not allege or present evidence that his probable cause determination was unreasonably delayed during the hours before his release or that any restraints upon his liberty existed after his release. *See id.* at 44, 111 S. Ct. at 1670; *Gerstein*, 420 U.S. at 114, 125 n.26, 95 S. Ct. at 863, 869 n.26. Thus, Swain failed to raise a fact issue on this portion of his due process claim against Corporal Hutson and Officer DeWall in their personal capacities. *See Telles v. City of El Paso*, 481 F. Supp. 2d 773, 779 (W.D. Tex. 2007) (affirming the finding of qualified immunity because the arrestee was released on bail on the day of his arrest and failed to show evidence of either an unreasonably delayed probable cause determination or a continued restraint on his liberty). Accordingly, we overrule this portion of Swain's second point.

Finally, Swain alleged in his petition that Sergeant Henning, an unnamed police officer, and unnamed clerks violated his constitutional rights by telling Swain to leave the police station, refusing to return his possessions or give him information about his case, and telling him to leave the clerk's office when he tried to pay his appeal bond. However, on appeal, Swain provides no citations to

26

relevant authority to support his contention that the trial court erred by dismissing these claims. Therefore, Swain's argument as to these claims is inadequately briefed and is waived. *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284.

Because Swain failed to raise a fact issue on each of his due process allegations, we overrule this portion of Swain's claim against the police officers and the Does in their personal capacities. *See Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102.

### v. Ex Post Facto Claim

Finally, Swain alleged in his petition that unnamed City functionaries violated his constitutional rights by instituting "ex post facto charges" when they mailed him the citation for itinerant vending without a license. The United States Constitution prohibits states from passing an ex post facto law, which is one that, in pertinent part, criminalizes and punishes an act that was done before the passage of the law and that was innocent when done. U.S. Const. art. I, § 10, cl. 1; *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S. Ct. 2715, 2719 (1990). In response to the other employees' evidence that Swain committed itinerant vending without a license on August 30, 2006, Swain did not allege or present any evidence that the law was passed after that date, such that it criminalized conduct that was innocent at the time of his arrest. *See Collins*, 497 U.S. at 42, 110 S. Ct. at 2719. Instead, he merely claimed that the citation was sent five months after the date of the incident and was pretextual, which did not satisfy his burden to allege a constitutional violation. *See United States v. Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 464 (1971) (recognizing that the applicable statute of limitations is the primary guarantee against bringing an overly stale criminal

27

charge); *Waltman*, 535 F.3d at 346. Because Swain failed to raise a fact issue regarding an ex post facto violation, we overrule this final portion of his second point pertaining to his claim against the Does in their personal capacities. *See Miranda*, 133 S.W.3d at 228; *Heard*, 252 S.W.3d at 102.

In sum, because the City was entitled to governmental immunity against the official-capacity claims and the other employees were entitled to qualified immunity against the personal-capacity claims, we overrule Swain's second point. *See Waltman*, 535 F.3d at 346; *Miranda*, 133 S.W.3d at 228.

### IV. Findings of Fact and Conclusions of Law

In his third point, Swain argues that the trial court erred by refusing to prepare findings of fact and conclusions of law after it granted each motion to dismiss.

When a judgment is rendered as a matter of law, findings and conclusions have no purpose and should not be requested or considered on appeal. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997). This is especially true when a plea to the jurisdiction does not involve disputed facts. *F-Star Socorro, L.P. v. El Paso Cent. Appraisal Dist.*, 324 S.W.3d 172, 175 (Tex. App.—El Paso 2010, no pet.) ("Absent a fact question, a trial court's decision granting or denying a plea to the jurisdiction is a question of law . . . ."). Therefore, even when the trial court receives evidence, findings and conclusions are only appropriate if the trial court is called upon to determine questions of fact upon conflicting evidence. *Port Arthur Indep. Sch. Dist. v. Port Arthur Teachers Ass'n*, 990 S.W.2d 955, 958 (Tex. App.—Beaumont 1999, pet. denied); *see Haddix*, 253 S.W.3d at 346 (deciding that, even though parties attached evidence to their filings, findings and conclusions were not required because the evidence

28

was undisputed); *Ford v. City of Lubbock*, 76 S.W.3d 795, 796–98 (Tex. App.—Amarillo 2002, no pet.) (holding that, although evidence was attached to the plea and to the response, findings and conclusions could not properly be considered on appeal because no fact dispute existed).

We determined above that Swain either failed to properly allege or failed to raise a fact issue on the constitutional violations that he claimed the judicial employees and other employees committed in their official and personal capacities. Thus, even though both sides submitted evidence, the trial court's dismissal of the claims against these employees did not involve disputed facts but was decided as a matter of law. *See F-Star*, 324 S.W.3d at 175; *Haddix*, 253 S.W.3d at 346; *Ford*, 76 S.W.3d at 796–98. Accordingly, findings of fact and conclusions of law were not appropriate, and the trial court did not err by refusing to prepare them after granting these employees' pleas to the jurisdiction. *See Pro-Line*, 938 S.W.2d at 443; *Port Arthur*, 990 S.W.2d at 958. Therefore, we overrule Swain's third point.

## V. Conclusion

Having overruled all of Swain's points, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: MCCOY, MEIER and GABRIEL, JJ.

DELIVERED: December 22, 2011

29